O’Neauii, J.
• It appears that the price of the negroes bought by the plaintiffs, and belonging to the trust estate, was, on the decree confirming their title, paid into Court, “subject to the future order of the Court.” In the meantime, it was referred to the Commissioner to report upon the different claims to this fund; and a part of the order of reference directed “ that G. L. Champion account before the Commissioner for his application of the funds which came into his hands from the sale of the bond to the Insurance Company, and that the Commissioner gave notice to the *70 creditors to come in and make their claims.” Under this part of the order, several creditors came in, established their demands, and obtained a decree directing payment. At June Term, 1825, the fund in Court, and such as might come to the Commissioner’s hands before the final report, were directed to be paid “ to the Fire and Marine Insurance Company, subject to the rights of the contesting claimants, and subject to the further order of this Court.” Since this order, the Court has done nothing further than continue the cause from term to term, under reference, until November, 1833, special Term, when the cause came on before Chancellor Johnston for trial. Two reports of the late Commissioner, establishing a large sum due by the' trust estate to John C., Claiborne C., and Eliza Virginia Vaughan, were presented for confirmation, which were resisted by the Eire and Marine Insurance Company; and the Chancellor quashed the reports, and ordered this .bill to be dismissed as to the Fire and Marine Insurance Company, unless the persons claiming the fund in opposition to the Company should file a cross bill within a limited time.
From this decree, John C., Claiborne C., and Eliza Virginia Vaughan, appeal on various grounds, which make the following questions: — 1st. Were the appellants rightly in Court, under the orders made in the cause as creditors claiming the funds ? 2d. If so, had the Chancellor a right to quash the Commissioner’s reports, and to cast upon the appellants the burden of filing a bill against the Fire and Marine Insurance Company to try the right to the said fund ?
*1. The fund in controversy came properly into the hands of the Court; for, on confirming the plaintiffs’ titles to the slaves which they had bought, it was the business of the Court to see that their price was applied to the purposes of the trust which had authorized their sale. This could not be done by leaving the fund to be paid by the Fire and Marine Insurance Company : they were not creditors of the grantor of the trusts, but of his trustee, Champion. They bought the plaintiffs’ bond from him, but the title to the negroes which he sold, and for which the bond was given, was defective, he having no power to make the sale. They could not have recovered the bond from the plaintiffs on account of this defect of title. When the Court of Equity confirmed the title, they assumed the trust, and the price was properly payable to them, as the fund applicable to the payment of the debts of Wilie Vaughan, in place of the slaves sold. The Fire and Marine Insurance Company having obtained nothing by their purchase of the bond, had a plain right to recover the amount paid by them to Champion for the bond from him ; and if they could show that he was in advance to his trust estate and was insolvent, then to take his place as a creditor of the trust, to the amount of the sum paid by them to him, if he was so far in advance to the estate; if not, to the extent he was. This is the state of the claim of the Fire and Marine Insurance Company: that it was properly before the Court is not denied. To decide whether it would entitle them exclusively to the money, three facts had still to be made out: 1. That there were no unsatisfied creditors of Wilie Vaughan. 2. That the trustee, Champion, was in advance for' the trust estate to a sum equal to the fund in dispute; and 3. That he was insolvent. — Until the first was established, the Fire and Marine Insurance Company could have no *71 exclusive right to the whole fund. The most they could contend for, on establishing the other two facts, would be to come in rateably with the other creditors of the trust, if there were any. To ascertain whether there were any creditors, all the creditors of Wilie Yaughan were requested by notice to come in and establish their demands. All who come in under that notice are parties to the cause, and are bound by all the proceedings. The appellants, it appears, came in under the order, and have (perhaps on an ex parte reference) satisfied the Commissioner of the debt due to them by Wilie Yaughan. This made them properly parties in Court, and as much entitled to its favor as the *Fire and r#ss. Marine Insurance Company. For,- notwithstanding they are in L possession of the fund, they are in possession subject to the further order of this Court, and the appellants were moving to have it paid over to them. In such a case the Court must decide on the hostile rights of the two claimants; and to enable it to do so, it might be referred to the Commissioner to ascertain and state the facts upon which the Court is called upon to decide. In this .way, every thing would appear by the record. There is nothing irregular in such a course of proceeding. It is every day’s practice on a creditor’s bill, to bring all the creditors before the Court by a notice requiring them to come in and prove their demands. In such a case there may be hostile and conflicting claims among the creditors; upon them the Court must decide on the coming in of the Commissioher’s report. A fresh bill would hardly be required to be filed in such a case, to make the creditors, coming in under the notice, parties before the Court.
2. If the Commissioner’s reports were made up entirely on an ex parte hearing of the plaintiffs, they might have been set aside; but I have looked through the Chancellor’s report in vain to see any evidence of the fact that they were so. In the absence of proof, the legal presumption would be, that the Commissioner had done his duty and given due notice before hearing the plaintiffs. That presumption is, I think, strengthened by the entries on the dockets at June Term, 1827 and 1828. In all events, I think the Chancellor erred in quashing the reports and ordering the appellants to file the cross bill, (as he has called it). We have seen they were properly parties; and notwithstanding there had been great delay and negligence in bringing the cause to trial, it is no more to be imputed to them than it is to the other parties. If the ease presented to him did not justify him in pronouncing a final decree in favor of the appellants, he ought at least to have sent them back to the Commissioner, with instructions. Situated as the case is, I do not think that we ought to confirm the Commissioner’s reports of 1827 and 1828, and direct the fund to be paid to the appellants.
It is ordered and decreed that the order quashing the reports, and the decree of the Chancellor, be reversed: that the cause be remanded to the Circuit Court, and that the Commissioner be directed to examine and report upon the claims of the creditors of Wilie Yaughan, which have been rendered to the former Commissioner and not decreed upon ; distinguishing which debts were contracted* before and which after the execution of the deed of trust: in such investigation, the Com- ■-' missioner’s report of 1827, and the undated report, (supposed 1828,) will b % prima facie evidence of the claims of the appellants; and the *72 Fire and Marine Insurance Company will have the right to examine and point out from the reports, or the evidence on which they were founded, any part or parts of the said claims which have been allowed improperly, and upon them the present Commissioner will decide and report: so too, they may by proof disprove the whole or any part of the said claims, and upon the proof which they may adduce, the Commissioner will decide and report.
It is also ordered and decreed, that the order of February Term, 1824, requiring Champion to account for the funds which came into his hands for the sale of the bonds he extended, and that the Commissioner do forthwith take the account ordered by it.